### BARTELDES SEED CO. v. MITCHELL et al.

No. 6315.—Opinion Filed April 25, 1916.
Rehearing Denied June 6, 1916.
(157 Pac. 935.)

**Pleading—Set-off and Counterclaim.**

The record examined, and it is **held** that the demurrer to that part of the answer which pleaded a set-off was properly sustained for reasons stated in the opinion, and,

there being no error in the case, same is affirmed.

(Syllabus by Hooker, C.)

Error from Superior Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by J. Mitchell and others against the Barteldes Seed Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

McLaury & Hopps, for plaintiff in error.

Chas. H. Garnett and Wilson & Tomerlin, for defendants in error.

Opinion by HOOKER, C. About January, 1913, the plaintiff in error and the defendants in error entered into the following contract:

"We hereby contract to grow the following varieties of vegetable plants for the Barteldes Seed Company: All cabbage, tomato, cauliflower, pepper, egg plant and celery plants to be delivered 25 plants in a bunch; sweet potato plants to be tied 100 plants to the bunch.

"We also agree to buy all seed to be used in growing all plants for the Barteldes Seed Company and pay for them at market gardeners' prices.

"That following is a list of varieties showing the number of bushels or pounds to be planted and price to be paid Mr. Mitchell and Mr. Colax per one thousand plants.

"Contract agreed to:
    "J. G. Mitchell.
    "N. Colax.

"Contract accepted:
    "The Barteldes Seed Co.
    "Otto Bofinger."

"The Barteldes Seed Company agrees to take all plants raised from these seed."

It is alleged in the petition that, pursuant to said contract, plaintiffs below planted all the seed furnished them by the company, to secure the payment of which a chattel mortgage was given on the plants to be grown, and that they afterwards prepared beds to grow said plants, and performed all the provisions of the contract, and did grow, ready for delivery, a large number of plants, which the company refused to accept in violation of its contract; that by reason of the failure of the company to accept said plants when they were ready for delivery plaintiffs have been damaged in the sum of $1,500. The defendant company admitted the execution of the contract, and denied liability for the alleged reason that the plants to be grown by the plaintiffs were to be delivered to the company in time for the opening of the season, which was about April 1, 1913, and that it was understood and agreed between the parties at the time the contract was executed

that said plants were to be delivered to the company at said time for shipment to Southern points, which fact was · known and agreed to by plaintiffs, and that by reason of their failure to deliver said plants in time to be used for said market plaintiffs were not entitled to recover. It was further alleged in the answer that the plants furnished by plaintiffs below to the company were inferior in quality, and the company were unable to handle the same, and suffered great loss by being compelled to go into the open market and buy plants at a greater price than the contract price, and that on account of the condition of the plants furnished by plaintiffs the purchasers thereof from the company were not satisfied, and had to be refunded their money; that on account of the lateness of the delivery of said plants and their faulty condition—the manner in which they were cared for—the company was unable to handle all the plants grown by the plaintiffs embraced in the contract between the parties.

It was further contended by the defendant company: That it made another contract with the plaintiffs on April 5, 1913, which read as follows:

"April 5, 1913.

"This is to certify that the Barteldes Seed Company, party of the first part, has contracted with J. G. Mitchell and N. S. Koulaxizer, party of the second part, to grow rhubarb and asparagus seed for root crop for fall market of 1913; said crop to be planted and gathered in good, seasonable time and delivered f. o. b. store as needed. The Barteldes Seed Company, party of the first part, agrees to pay for rhubarb, 100 roots, $1.25; asparagus 1.000 roots $1.65—when delivered.

"It is understood that this crop is grown for seed, and that extra care will be taken in planting and cultivating, so as to insure the best possible results from acreage planted.

"The above seed is to be planted and cultivated in a good workmanlike manner, and it is understood that the above variety of seed is to be planted at least ¼ of a mile from any other kind of seed of the same variety, to prevent mixing.

"The Barteldes Seed Company further agrees to use any and all of the roots produced from the above said acres or may reject any part of it which he may consider unfit for seed, he will have no further claim against stock, and the said Mitchell and N. S. Koulaxizer may dispose of it as they may see fit; but it is understood that crops grown from seed stock furnished by the Barteldes Seed Company will not be offered for sale to other parties.

"Witness our hands this fifth day of April 1913.         The Barteldes Seed Co.,
"Party of the First Part.
"Otto Bofinger, Mgr.
"J. G. Mitchell,
"N. S. Koulaxizer."

That the plaintiffs below have failed to comply with said contract, and by reason thereof defendant has been damaged, which it pleads as an offset to plaintiff's cause of action sued on here. The lower court sustained a demurrer to this set-off, and the action of the court in so doing is assigned as error and brought here for review.

It is urged by the defendants in error that the contract here is void for uncertainty and lack of mutuality, and the lower court apparently took this view of it. It will be noticed from the contract that the company obligated itself "to use any or all of the roots produced from the above said acres or may reject any part of it which he may consider unfit for seed." To give this contract a literal construction would be to hold that the company was obligated in no way whatever; but to give the contract that character of a construction that was within the contemplation of the parties at the time the same was executed it must be held that the company could not arbitrarily reject the plants grown, but should be held to a reasonable exercise of the discretion vested in the company by the terms of the contract, and, if the roots furnished by the first party to said contract were reasonably fit for the purpose for which they were to be used, then the company could not arbitrarily reject same, but would be bound to accept and pay therefor in accordance with its contract. Assuming, without deciding, that the contract was not void for the reason stated above, the pleading itself, to which the demurrer was sustained, does not claim that any part of the articles enumerated in said contract, which were by its terms to be grown for the company, were grown by the plaintiffs and were suitable for delivery to the company in accordance with the terms of the said contract, and until that condition existed no liability under this contract would attach to the plaintiffs below; for by the terms of the contract itself the company had a right to reject any roots that were unsuitable for the purpose for which it desired the same, and there was no guaranty or representation or warranty on the part of the plaintiffs below that they would produce roots of a certain quality or kind, and, if they failed to produce roots of a certain quality or kind, they were not liable to the company for any breach of the contract. And, as we construe the contract, the plaintiffs could not become liable to the company until they did produce roots that were or

could have been acceptable to the company. and thereafter failed to deliver them to the company according to the terms of the contract. It is not contended in the set-off that a single one of the roots raised by the plaintiffs under said contract was such as the company would have accepted, and, in the absence of this allegation, the demurrer was properly sustained.

This case was tried in the court below by the plaintiffs and defendant upon the theory that the season for the sale of plants of the character grown here virtually closed on June 15, 1913. The plaintiffs below contended that after the company refused to accept said plants under its contract they were unable to dispose of the same to other parties on account of the season having ended and there being at that time no market for said plants. And the company seeks to justify its refusal to accept said plants on account of its inability to dispose thereof through the regular channels of trade to its customers, asserting that the season had at that time closed. The parties having adopted this theory of the case in the trial court, they will be bound by the same here, and neither will be permitted to abandon the theory upon which the case was tried below and substitute for the same a new theory in this court. The parties hereto having virtually agreed that the season had ended and there was no market on June 15, 1913, for the sale of the plants involved in this action, it then follows that. if the plaintiffs had, during the season, complied with the terms of their contract in growing said plants and had delivered the same in the proper condition or stood ready to deliver the same in good condition and in due season to the defendant company, and if the company, without any excuse or reason therefor, failed and refused to receive said plants when they were delivered or tendered, the plaintiffs were entitled to recover on their contract with the company, the contract price for all of the plants grown by them under said contract, which they tendered to the defendant company, and which the company refused to accept.

The plaintiff in error offered to the court a large number of instructions, and those germane to the issues were covered by the instructions given.

It is insisted by plaintiff in error that it was the duty of the defendants in error to minimize the damage as much as possible. This as an abstract proposition is a correct rule of law, but it cannot be carried so far as to compel the defendants in error, who have made their contract with the plaintiff in error, to grow these plants for them and to furnish the same in wholesale lots to go into the market and retail at the close of the season plants of this character. And in fact the evidence introduced by the plaintiff in error, which, according to the verdict of the jury, had breached its contract, did establish the impossibility on the part of the defendants in error to minimize their damages to any appreciable extent by the sale of plants to other parties after the company had signified its refusal to comply with its contract. It is fair to assume that if the plaintiff in error, with its facilities to handle plants at wholesale and retail, was unable on account of the market to accept these plants, then the defendants in error, obscure as they were, were likewise unable to handle the same at wholesale after that date. It must be borne in mind here that the testimony of the defendants in error, which was approved by the findings of the jury. was to the effect that these plants were all right and in a good condition at the time they were delivered to the company, and that the other plants, which were on hand ready for delivery, were suitable for the purpose for which they were intended. This was, in effect, the finding of the jury, and the same is supported by the testimony of the plaintiffs.

The jury evidently concluded that on account of the decreased demand for plants in the season of 1913, which was much less than had been anticipated by the company at the time it made its contract with the plaintiffs below, the company had refused to accept these plants solely to avoid a loss to itself, and that it was not justified in refusing to comply with its contract.

There being no error prejudicial to the rights of the plaintiff in error apparent on this record. the judgment is affirmed.

By the Court: It is so ordered.